UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRISTEN B.,

                                        Plaintiff,

v.                                                                              5:20-CV-0032
                                                                                (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OLINSKY LAW GROUP                                   HOWARD OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                      MICHAEL HENRY, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Kristen B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and §

1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security

("Defendant" or "Commissioner") denying her applications for Social Security Disability

Insurance ("SSDI") and Supplemental Security Income ("SSI").  (Dkt. No. 1.)  This case has

proceeded in accordance with General Order 18 of this Court which sets forth the procedures to

be followed when appealing a denial of Social Security benefits.  Currently before the Court are

Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 10.)  For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on March 17, 2017, and an application for SSI on March 30, 2017.  (Administrative Transcript ("T.") 210-219.)  Both applications allege that she became disabled on November 5, 2015, due to heart disease, fibromyalgia, carpal tunnel syndrome, and anxiety.  (T. 232.)  Her applications were denied initially on May 22, 2017. (T. 120-139.)  Plaintiff requested a hearing which was held on November 14, 2018, before Administrative Law Judge ("ALJ") Gretchen Mary Greisler and included testimony from Plaintiff and vocational expert ("VE") Rachael A. Duchon.  (T. 55-88.)  The ALJ issued an unfavorable decision on December 12, 2018.  (T. 9-28.)  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 8, 2019. (T. 1-4.)

## II.   GENERALLY APPLICABLE LAW

### A.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

2

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.      Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the

---

[1]      The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and
Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.  FACTS

As of the date of her administrative hearing, Plaintiff was 45 years old.  (T. 60.)  Plaintiff left school at age 14, after completing the seventh grade.  (T. 62.)  She has taken GED courses but has not yet obtained a certificate.  (T. 76-77, 579.)  She resides in an apartment with her fourteen-year-old son, and has four adult children.  (T. 61.)  Her employment history includes a number of retail positions, with duties that included operating the cash register and stocking small items on shelves such as candy and cough medicine.  (T. 63-66, 264.)  Some of this work was on a part-time basis.  (T. 64.)

Plaintiff has suffered two heart attacks, with the most recent occurring in February 2016. (T. 67, 353, 585.)  Following this second heart attack, Plaintiff underwent a complex angioplasty that included the installation of seven stents in her right coronary artery.  (T. 67, 353.)  She has seen improvement in her cardiac symptoms with medication and exercise, despite continued fatigue.  (T. 67, 373.)  She still experiences occasional heart palpitations without chest pain, but her cardiologist has attributed these to stress and anxiety.  (T. 356, 381, 384, 418.)

Plaintiff has also been diagnosed with fibromyalgia and chronic pain syndrome.  (T. 589, 599, 809.)  She described tenderness and pain in her shoulders, chest, arms, back, hips, knees, and feet.  (T. 68, 619.)  Her primary treatment for these impairments has been exercise and yoga, but Plaintiff expressed doubts about the effectiveness of this approach.  (T. 68-69.)

In addition to her physical impairments, Plaintiff has received mental health treatment for anxiety and depression, including counseling and medication, since 2009. (T. 70-71, 579, 1014.) In addition to heart palpitations, Plaintiff experienced lack of concentration, panic attacks, and sleep disturbances as a result of social and family stress.  (T. 1014.)  She testified that she particularly disliked being around crowds of people. (T. 70-71.)

The record includes Plaintiff's treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    **THE ALJ'S DECISION**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016.  (T. 14.)  After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the alleged onset date of November 5, 2015, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia/chronic pain syndrome, status post cardiac catheterization, tachycardia, coronary artery disease, claustrophobia, adjustment disorder, rule out of borderline intellectual functioning, and agoraphobia.  (T. 15.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment.  (T. 15-16.) At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of sedentary work.[2]  (T. 16.)  More specifically, the ALJ concluded that Plaintiff can

---

[2]      The sedentary level of exertion calls for lifting no more than ten pounds at a time, with only about two hours of standing and/or walking and about six hours sitting out of an eight-hour workday.  *See* Social Security Ruling (SSR) 83-10, *Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2*, 1983 WL 31251 at *5; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).

occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps but cannot climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. [Plaintiff] can perform work which does not require more than simple, short interactions with supervisors or coworkers; and does not require more than incidental contact with the public and, although [Plaintiff] may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominantly involve working with objects rather than people. [Plaintiff] can perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes. [Plaintiff] cannot work around crowds.

(T. 16-17.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 17.) The ALJ further stated that she considered opinion evidence in accordance with 20 C.F.R. § 404.1527 and 416.927. (*Id*.) The ALJ also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*.)

The ALJ then determined that Plaintiff was unable to perform any past relevant work. (T. 21.) However, the ALJ evaluated the VE testimony, and found that "considering the [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (T. 21-22.) Accordingly, the ALJ determined that Plaintiff was not disabled. (T. 22-23.)

## V.    **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.      The ALJ failed to properly assess the medical opinion evidence.  (Dkt. No. 9 at 17-24.)

2.      The ALJ failed to adequately assess Plaintiff's subjective complaints, including her hearing testimony.  (Dkt. No. 9 at 24-27.)

Defendant contends that the ALJ's decision is supported by substantial evidence, and that the Commissioner's determination should be affirmed.  (Dkt. No. 10 at 4-25.)  For the following reasons, this Court agrees with Defendant and will dismiss the complaint.

## VI.   **RFC DETERMINATION**

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering a RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations

into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant."); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing, conclusory statements regarding plaintiff's capacities are not sufficient.").   An ALJ must specify the functions a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).   The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.      Evaluating Medical Evidence

Pursuant to the "treating physician rule"[3] set out in 20 C.F.R. § 404.1527(c), "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).   However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, "'the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).   However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required.   *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013) (citing

---

[3]      For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 416.920c(a).  Because Plaintiff's SSDI application was filed prior to March 27, 2017, the treating physician rule applies to both applications as a matter of policy.  HALLEX I-5-3-30(IV)(B), available at https://www.ssa.gov/OP_Home/hallex/I-05/I-5-3-30.html.

*Halloran v. Barnhart*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

### 3.    Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how

11

[the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*; *see also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

**B.      Plaintiff's Physical Functional Limitations**

As noted above, the ALJ found that Plaintiff could perform less than the full range of sedentary work. (T. 16).  Plaintiff argues that the ALJ did not evaluate the medical and

12

testimonial evidence regarding Plaintiff's physical impairments, particularly the evidence related

to Plaintiff's pain and the resulting limitations on her ability to stand, walk, and sit. (Dkt. No. 9,

at 23-24.)  This Court disagrees and concludes that the ALJ's RFC assessment of Plaintiff's

physical impairments was supported by substantial evidence.

### 1.    Consultative Examiner Dr. Kalyani Ganesh's Opinion

In reaching the physical RFC determination, the ALJ assigned "partial weight" to the

opinion of Dr. Kalyani Ganesh, who performed a consultative examination of Plaintiff on May

17, 2017.  (T. 17, 585-588.)  Prior to the examination, Plaintiff described her history of heart

problems, and reported bilateral knee pain and other aching pain that "comes and goes," along

with pain that radiates down her arms and make her fingers stiff.  (T. 585.)  She also reported

that she had not been formally diagnosed with fibromyalgia, although Plaintiff suspected that she

had it.  (*Id*.)  Plaintiff reported that she stayed active and went to the gym regularly.  (*Id*.)

During the consultative examination, Plaintiff appeared in no acute distress, and

demonstrated a normal gait and the ability to walk on her heels and toes without difficulty.  (T.

586.)  Her cervical and lumbar spine showed full flexion, full extension, full lateral flexion

bilaterally, and full rotary movement bilaterally.  (T. 587.)  Plaintiff demonstrated full range of

motion in her shoulders, elbows, forearms and wrists bilaterally, as well as full range of motion

in her lower extremities bilaterally.  (*Id*.)  She demonstrated full strength in her arms and legs

bilaterally, as well as intact hand and finger dexterity and full grip strength.  (*Id*.)

Based on this examination, Dr. Ganesh opined that Plaintiff had no limitations with

regard to sitting, standing, or walking. (T. 588.)  The ALJ found this conclusion to overestimate

Plaintiff's ability to stand and walk. (T. 17.)  In explaining her decision, the ALJ cited treatment

notes regarding multiple tender points[4] supportive of Plaintiff's fibromyalgia diagnosis, despite unremarkable results during the consultative examination.  (T. 17, 589, 608.)  The ALJ's conclusion is not only consistent with the broader medical record, but also the nature of fibromyalgia pain.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2d Cir. 2003) (quoting *Lisa v. Sec. of Dep't of Health and Human Svcs.*, 940 F.2d 40, 45 (2d Cir. 1991)) ("'In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.'").

The ALJ found evidentiary support for the remainder of Dr. Ganesh's opinion, namely that Plaintiff had a "moderate limitation" with regard to lifting, carrying, pushing and pulling, and found it was consistent with at least a sedentary level of work activity.  (T. 17, 588.)  As Plaintiff correctly states in her brief, a consultative examiner's "use of the terms 'moderate' and 'mild,' *without additional information*," is insufficient for an ALJ to assess Plaintiff's exertional limitations.  *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (superseded by regulation on other grounds by 20 C.F.R. § 404.1560(c)(2)) (emphasis supplied).  However, medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record.  *Antoine T. v. Comm'r of Soc. Sec.*, 18-CV-0232, 2019 WL 2327937, at *10 (N.D.N.Y. May 31, 2019) (Hummel, M.J.) (vague limitations in consultative opinion were made "more concrete" by the ALJ's analysis of the remaining opinion and other evidence).

---

[4]     Tender points are painful areas around the joints that are extremely sensitive to touch.
https://www.webmd.com/fibromyalgia/guide/fibromyalgia-tender-points-trigger-points#1

Here, Dr. Ganesh's physical examination included an assessment of Plaintiff's strength in the upper and lower extremities.  (T. 587.)  However, the ALJ placed greater emphasis on testimonial and other medical opinion evidence to clarify the "moderate" limitations described by Dr. Ganesh.  (T. 17.)  For example, Plaintiff testified at her hearing that she could lift between five and ten pounds comfortably.  (T. 73.)  Plaintiff's primary care physician, Dr. Maryellen Lewis, opined in June 2017, that Plaintiff could frequently lift up to ten pounds, and could occasionally lift up to twenty pounds.  (T. 610.)  In November 2018, Dr. Lewis offered a more restrictive opinion, and opined that Plaintiff could lift ten pounds on an occasional basis.  (T. 1242.)  Plaintiff's treating cardiologist, Dr. Michael Gabris, opined in October 2018, that Plaintiff could frequently lift up to ten pounds, and occasionally lift up to twenty pounds.  (T. 1182.)  All of these limitations meet or exceed the lifting and carrying restrictions for the sedentary work in Plaintiff's RFC, and provide sufficient context for the ALJ to assign partial weight to Dr. Ganesh's consultative opinion.

## 2.	Primary Care Physician Dr. Maryellen Lewis' Opinions

There are a number of medical opinions in the record from Plaintiff's primary care physician, Dr. Maryellen Lewis.  (T. 608-613, 649-650, 1241-1244.)  On November 14, 2016, Dr. Lewis completed an "Examination for Employability Assessment."  (T. 649-650.)  Using a checkbox form, Dr. Lewis opined that Plaintiff was "moderately limited" with respect to walking, standing, sitting, lifting/carrying, pushing/pulling/bending, seeing/hearing/speaking, and climbing stairs or other inclines.  (T. 649.)  She also opined that Plaintiff was able to participate in up to ten hours of work or other activities per week, with that restriction expected to last between six to twelve months.  (T. 650.)

15

Dr. Lewis completed a more detailed Medical Source Statement on June 4, 2017.  (T. 608-613.)  She noted that she had been treating Plaintiff since April 2016, for physical impairments including coronary artery disease and body pain.  (T. 608.)  Dr. Lewis identified Plaintiff's symptoms as including multiple tender points, chronic fatigue, morning stiffness, numbness and tingling feet, muscle weakness, and bilateral pain in the lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands, hips, legs, knees, ankles, and feet. (T. 608-609.)

When the form requested an estimate of how far Plaintiff could walk without rest or severe pain, Dr. Lewis stated that Plaintiff could walk on a treadmill for thirty minutes.  (T. 609.) She opined that Plaintiff could stand or walk for a total of about two hours during the workday and could sit for a total of about four hours during the workday.  (*Id*.)  She further opined that Plaintiff required a job that permitted shifting positions at will from sitting, standing, and walking.  (T. 610.)  As noted above, she opined that Plaintiff could frequently lift up to ten pounds, and occasionally lift up to twenty pounds in a competitive work situation.  (*Id*.)  In Dr. Lewis' opinion, Plaintiff could frequently twist, stoop/bend, crouch/squat, and occasionally climb ladders or stairs.  (*Id*.)  Dr. Lewis also opined that on a frequent basis, Plaintiff could use her hands for grasping, fingers for fine manipulation, and arms for reaching.  (*Id*.)

On November 15, 2018, Dr. Lewis prepared an additional Medical Source Statement that suggested greater functional limitations.  (T. 1241-1244.)  She listed Plaintiff's current diagnoses as coronary artery disease, anxiety with depression, agoraphobia, and fibromyalgia.  (T. 1241.) She opined that Plaintiff could only sit for a total of about two hours and could only stand/walk for a total of about two hours.  (*Id*.)  She also opined that Plaintiff required a job that permitted shifting positions at will from sitting, standing, or walking, and would need unscheduled breaks

each hour.  (*Id*.)  She opined that Plaintiff could frequently lift less than ten pounds, and

occasionally lift up to ten pounds.  (T. 1242.)  In Dr. Lewis' opinion, Plaintiff could frequently

twist, but could only occasionally stoop/bend, crouch/squat, or climb ladders and stairs.  (*Id*.)

She also opined that the functional limitations set out in the November 15, 2018, opinion existed

and persisted to the same degree since at least November 5, 2015.  (T. 1245.)

In addition to these three more formal opinions, the record also contains correspondence

from Dr. Lewis dated March 16, 2017, opining that Plaintiff should be limited to ten hours of

work or similar activities per week.  (T. 432.)

The ALJ assigned "limited weight" to Dr. Lewis' opinions.  (T. 18-19.)  With regard to

Plaintiff's physical limitations, the ALJ particularly discounted Dr. Lewis' opinion that Plaintiff

could only sit for a total of either two- or four-hours during an eight-hour workday.  (T. 18, 609,

1241.)   The ALJ noted that there was no evidence in the medical record that Plaintiff had

limitations in her ability to sit, and Plaintiff had not raised the issue in her applications for

benefits.  (T. 18, 248-249.)  Despite mentioning difficulty sitting during her testimony, there is

no record evidence that Plaintiff raised this issue with any of her treatment providers.  (T. 74.)

The ALJ also found that the increase in functional limitations from Dr. Lewis's 2016

opinion to her 2018 opinion were not supported by her most recent treatment notes, which

endorsed a conservative approach to managing Plaintiff's symptoms.  (T. 18.)  In September

2017, Plaintiff expressed a reluctance to take additional medicine for her fibromyalgia, and Dr.

Lewis recommended low impact aerobic exercise.  (T. 809.)  On August 8, 2018, Dr. Lewis did

not identify any significant cardiovascular or musculoskeletal concerns, and recommended that

Plaintiff use yoga as physical therapy to address her fibromyalgia pain.  (T. 871-872.)  Plaintiff

rated her pain at the time as a 5 out of 10.  (T. 871.)  On September 19, 2018, Plaintiff rated her

pain as a 3 out of 10.  (T. 875.)  Dr. Lewis again recommended replacing Plaintiff's cardio

exercises with yoga, but Plaintiff appeared to reject this recommendation, because "she loves the

cardio."  (*Id*.)

This Court notes that the check-box nature of Dr. Lewis' multiple opinions offered little

narrative explanation for general inconsistencies with the overall medical record, in particular the

perceived deterioration of Plaintiff's physical functioning between June 2017, and November

2018.  *See Mix v. Astrue*, 09-CV-0016, 2010 WL 2545775, at *5 (W.D.N.Y. June 8, 2010)

("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are

weak evidence at best.").  The cursory narrative also failed to explain the basis for Dr. Lewis'

position that Plaintiff's condition had not significantly changed since November 5, 2015, even

though she did not begin to treat Plaintiff until April 2016.  (T. 608, 1245.)   Taking all these

factors into account, the ALJ marshaled substantial evidence to support the reduced weight

assigned to Dr. Lewis' opinion, despite her status as a treating physician.

### 3.    Treating Cardiologist Dr. Michael Gabris' Opinion

The ALJ also considered the October 24, 2018, medical source statement prepared by

Plaintiff's cardiologist, Dr. Michael Gabris.  (T. 17-18, 1181-1183.)  Dr. Gabris had seen

Plaintiff at least once every four months since at least 2014.   (T. 322, 1181.)  Dr. Gabris limited

his opinion to Plaintiff's "cardiac status" but still provided a general overview of her functional

limitations.  (T. 1183.)  Dr. Gabris opined that Plaintiff could sit or stand for more than two

hours at one time and could also sit or stand/walk for at least six hours each during an eight-hour

workday.  (T. 1182.)  He also opined that Plaintiff could frequently lift up to ten pounds and

could occasionally lift up to twenty pounds.  (T. 1182.)  Dr. Gabris further opined that Plaintiff

could frequently twist, stoop/bend, crouch/squat, and climb stairs.  (*Id*.)  He limited Plaintiff to

rarely climbing ladders.  (*Id.*)  He reported that Plaintiff's beta blockers and statin medication did

not interfere with her daily activities.  (T. 1181.)  Without elaboration, Dr. Gabris also provided

his opinion that plaintiff had no functional limitations that existed and persisted to the same

degree since November 5, 2015.  (T. 1184.)

The ALJ assigned "partial weight" to Dr. Gabris' opinion due to his status as a treating

specialist, and the opinion's consistency with Plaintiff's cardiology records that included regular

comprehensive physical examinations in addition to diagnostic cardiac tests.  (T. 17-18, 1188-

1191.)  The ALJ reduced the overall weight assigned to Dr. Gabris' opinion to account for the

disclaimer that he was limiting his opinion to Plaintiff's cardiac status, and in recognition of the

functional impact of Plaintiff's other impairments, such as fibromyalgia and anxiety, that were

outside Dr. Gabris' specialty.  (T. 18, 1183.)

### C.      Plaintiff's Functional Mental Limitations

Plaintiff also contends that the ALJ erred in her evaluation of Plaintiff's mental

impairments, particularly her ability to maintain attention and concentration.  (Dkt. No. 9 at 19-

22.)  This Court finds that the ALJ's consideration of the impact of Plaintiff's mental

impairments on her RFC was supported by substantial evidence.

### 1.      Consultative Examiner Jeanne Shapiro's Opinion

In determining Plaintiff's mental RFC, the ALJ assigned "partial weight" to the opinion

of Dr. Jeanne A. Shapiro, who performed a consultative psychiatric examination of Plaintiff on

May 17, 2017.  (T. 18, 579-583.)  Plaintiff advised Dr. Shapiro that she had been hospitalized for

psychiatric reasons in 2009, and that her current treatment consisted of monthly outpatient visits

for medication management and weekly appointments with a therapist.  (T. 579.)

During the consultative examination, Plaintiff displayed a cooperative demeanor and was responsive to questions. (T. 581.) She showed coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or disordered thinking. (*Id*.) She appeared relaxed and comfortable, and showed intact attention and concentration. (*Id*.) Plaintiff's recent and remote memory skills were intact, as she was able to recall three objects immediately and after four minutes and restate a series of numbers forward and backward. (*Id*.)

Based on her examination, Dr. Shapiro opined that Plaintiff had no limitations understanding, remembering, or applying simple directions and instructions. (T. 582.) In Dr. Shapiro's opinion, Plaintiff had mild limitations understanding, remembering or applying complex directions and instructions, and no limitations using reasoning and judgment to make work-related decisions. (*Id.*) She further opined that Plaintiff had no limitations interacting with supervisors, co-workers, and the public, but had mild limitations sustaining concentration and performing a task at a consistent pace when anxious. (*Id*.)

Dr. Shapiro opined that Plaintiff had no limitations sustaining an ordinary routine and regular attendance at work, and mild limitations regulating her emotions, controlling behavior, and maintaining her well-being. (*Id*.) She further opined that Plaintiff had no limitations being aware of normal hazards and taking appropriate precautions. (*Id*.)

The ALJ assigned "partial evidentiary weight" to Dr. Shapiro's opinion because it was consistent with the medical evidence that Plaintiff could perform simple work activity. (T. 18.) However, she reasonably exercised her discretion to discount the opinion, based on a single consultative examination, where it did not account for Plaintiff's documented difficulties with social interaction and stress that would be likely to impair functioning in a fast-paced production environment. (T. 18, 616, 975, 990.)

20

### 2.    Treating Psychologist Dr. Dennis McKillop's Opinion

Dr. Dennis McKillop, Plaintiff's treating psychologist, set out a brief opinion in an "Examination for Employability Assessment" dated December 1, 2016. (T. 615-616.)  Although Dr. McKillop did not complete the included check-box form specifying Plaintiff's mental limitations, he did opine that Plaintiff could perform up to ten hours of work or similar activities per week, with reasonable accommodations. (T. 616.)  Dr. McKillop described these accommodations as avoidance of "overly stressful, complicated, or time pressure tasks." (*Id*.)

The ALJ assigned limited weight to Dr. McKillop's opinion that Plaintiff could only perform ten hours of work each week because she found no support for this restriction in the opinion itself or the overall record. (T. 19.)  The ALJ noted that Plaintiff's most recent mental health treatment notes indicated normal mental status examinations and an overall improvement in Plaintiff's mental health symptoms. (*Id*.)  In particular, the ALJ cited August 7, 2018, treatment notes indicating that Plaintiff's attention and concentration were within normal limits, and she did not show a depressive or anxious mood. (T. 1166-1167.)  Plaintiff reported that her panic attacks were under control, her sleep had improved, and that she did not feel depressed despite many stressors in her life. (T. 1169.)  In October 2018, Plaintiff reported that her anxiety had improved, and that she was feeling hopeful after moving to a new apartment and better school district for her son. (T. 1174.)  She also reported that her medication had helped control her panic symptoms. (T. 1175, 1180.)  Upon evaluation, Plaintiff again demonstrated normal attention and concentration, intact memory, and a normal mood. (T. 1177-1178.)  In discounting his opinion, the ALJ's RFC determination still incorporated Dr. McKillop's recommended accommodation that plaintiff avoid stressful, overly complicated, time sensitive, or fast-paced work. (T. 16-17, 616.)

### 3. Primary Care Physician Dr. Maryellen Lewis' Opinions

Plaintiff's primary care physician, Dr. Lewis, also opined on Plaintiff's mental health, by authoring several opinions that suggest deterioration in Plaintiff's mental health over the course of her treatment. (T. 1241-1244.) On June 9, 2017, Dr. Lewis opined that Plaintiff's anxiety, depression, and panic attacks resulted in certain functional limitations. (T. 611.) She opined that Plaintiff was "limited but satisfactory" in certain areas: accepting instructions and responding appropriately to criticism from supervisors; interacting appropriately with the general public; and maintaining socially appropriate behavior. (*Id*.) Dr. Lewis also opined that Plaintiff was "seriously limited, but not precluded" in her ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain regular attendance and punctuality within customary tolerances, make simple work-related decisions, get along with co-workers or peers, and travel to an unfamiliar place. (*Id*.) She also opined that Plaintiff was "unable to meet competitive standards in several areas: maintaining attention and concentration for a two hour segment; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (*Id*.)

In Dr. Lewis' opinion, Plaintiff's deficiencies in concentration, persistence, and pace prevented her from completing tasks in a timely manner and were likely to force Plaintiff off-task more than twenty percent of the time. (T. 612.) Dr. Lewis estimated that Plaintiff's impairments would cause her to be absent from work more than four days per month. (*Id*.)

Dr. Lewis also completed a check-box form addressing Plaintiff's mental functional limitations as part of her opinion dated November 14, 2016.  (T. 649.)  She opined that Plaintiff was "moderately limited" across a number of functional areas: performing low stress, simple and complex tasks independently; interacting with others and maintaining socially appropriate behavior; maintaining attention and concentration for rote tasks; and functioning in a work setting.  (*Id.*)  This November 2014, opinion did not include any narrative to explain her mental health findings.  (T. 649-50.)

Dr. Lewis also offered her opinion on Plaintiff's mental health in her Medical Source Statement dated November 15, 2018.  (T. 1243.)  She opined that Plaintiff had "no useful ability to function" with regard to maintaining attention for a two hour segment.  (*Id.*)  She also opined that Plaintiff was "unable to meet competitive standards" in several functional areas: working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruption from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Lewis further opined that Plaintiff was "seriously limited, but not precluded" in her ability to accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.  (*Id.*)   In a short narrative, Dr. Lewis stated that "[Plaintiff] has trouble with concentration and focus as a result of her depression and anxiety.  She is unable to focus on the task at hand and is consistently getting distracted."  (*Id.*)

In evaluating Dr. Lewis' opinion, the ALJ found that the most restrictive mental limitations were not supported by the record, that contained a number of mental status examinations depicting improvement or stability in Plaintiff's symptoms.  (T. 18, 1166-67, 1169,

23

1174, 1177-78.)  Comparing Plaintiff's most recent mental status examinations in September and

October 2018, with Dr. Lewis' assessment of November 2018, the ALJ noted that Plaintiff's

mood was repeatedly considered within normal limits, with intact thought processes and a

spontaneous and cooperative demeanor.  (T. 1166-67, 1177-78.)  Her attention and concentration

were also found to be within normal limits during both examinations.  (T. 1166, 1177.)  In

October 2018, Plaintiff denied any depression symptoms, and reported that her anxiety was

under control.  (T. 1174.)  The ALJ also considered Plaintiff 's ability to successfully handle the

physical and mental stress of moving apartments during this time.[5]  (T. 18, 1174.)

Dr. Lewis' mental health opinions utilize the check-box form and thus provide no

narrative explanation for the divergence from the longitudinal record cited by the ALJ.  In

addition, as recognized by the ALJ, Dr. Lewis was a primary care physician with no evident

specialization in mental health.  (T. 18.)  Although Dr. Lewis conducted mental status

examinations of Plaintiff, she did not oversee Plaintiff's mental health treatment.  Dr. McKillop

and his staff had managed Plaintiff's psychiatric medication and psychotherapy since at least

January 2015, with no direct input from Dr. Lewis.  (T. 1070, 1098, 1110, 1130.)  By taking all

these factors into account, the ALJ provided substantial evidence to support the weight that she

assigned to Dr. Lewis' treating physician opinion.

---

[5]     Plaintiff contends that the ALJ's consideration of Plaintiff's successful move was an
improper or irrelevant line of inquiry.  (Dkt. No. 9, at 20.)  However, the record shows that
Plaintiff coordinated the move so that her son could attend a school district better suited to his
needs, and packed for the move herself despite the aggravation of her physical symptoms. (T.
442, 871, 965, 1163.)  The ALJ validly considered these facts in concluding that Plaintiff's
functional limitations were not as severe as depicted in Dr. Lewis' opinion.

**D**.    **Plaintiff's Testimony**

Plaintiff testified that her physical pain affected her ability to walk and to sit for extended periods.  (T. 17, 68-69).  She also testified that her psychological symptoms interfered with her ability to be around people.  (T. 70.)  Plaintiff also complained of fatigue that resulted from her multiple impairments and the medication that she took to treat them.  (T. 17, 69-70.)

The ALJ considered Plaintiff's testimony but found it inconsistent with the longitudinal medical record and Plaintiff's documented activities of daily living.  (T. 17.)  Citing Plaintiff's mental health records from September 2016, January 2017, April 2017, and October 2018, the ALJ found a pattern of improvement as Plaintiff proceeded with treatment.  (T. 20, 476, 507, 525, 1174.)  Likewise, the ALJ reviewed Plaintiff's treatment records from her primary care physician, cardiologist, and rheumatologist for consistency with her hearing testimony. (T. 19.)  The ALJ found that these reports generally indicated normal musculoskeletal results after treatment with medication and physical therapy, despite symptoms of chronic pain and fibromyalgia, including continued tenderness in her legs.  (T. 19, 530, 644-645.)  The ALJ cited evidence that Plaintiff's fatigue improved after a change in her blood pressure medication.  (T. 19, 589.)  She also found no objective medical evidence that Plaintiff was unable to meet the sitting requirements of sedentary work.  (T. 19.)

Furthermore, the ALJ reasonably concluded that the significant restrictions described in Plaintiff's testimony were inconsistent with evidence of her activities of daily living.  (T. 20-21.)  For example, Plaintiff reported that she was able to take care of household chores for herself and her son, including cooking, cleaning, laundry, and shopping, by pacing herself and taking regular breaks.  (T. 20-21, 72, 586.)  In addition, Plaintiff attended GED classes each weekday for up to two hours at time.  (T. 20, 579.)  Plaintiff testified that she went to the gym about three times per

week, spending a half hour on the treadmill[6] and another half hour socializing with others there. (T. 20-21, 70, 875.)  When Dr. Lewis recommended less strenuous yoga for a period, Plaintiff declined because she "loves the cardio."  (T. 875.)

  **E.**  **Substantial Evidence Supports the ALJ'S RFC Determination**

  Plaintiff contends that the ALJ assigned too little weight to the treating source opinions, too great a weight to consultative examination opinions, and failed to accept Plaintiff's description of her symptoms.  This Court is not persuaded.  The ALJ is responsible for reviewing all the medical and other evidence before her, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) (Sharpe, C.J.) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (Kahn, J.).  Thus, in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in the various medical opinions, nor craft an RFC mirroring a particular opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the opinions that she deemed most consistent with Plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the

---

[6]  Plaintiff's physical therapy notes describe this exercise as "walking on treadmill 5.5 mph for 30 min on an incline."  (T. 624.)

conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta*, 508 F. App'x. at 56.

The Court also notes that the ALJ merely "discounted, but did not wholly disregard" the treating physician opinions favored by Plaintiff.  *James C. v. Comm'r of Soc. Sec.*, 19-CV-1206, 2020 WL 6445907, at *12 (N.D.N.Y. November 3, 2020) (Dancks, M.J.).  Consistent with fibromyalgia and chronic pain diagnoses and Plaintiff's documented leg pain and tenderness, the ALJ's RFC determination limited Plaintiff to sedentary work that required no more than two hours total of standing and/or walking.  (T. 19.)  In light of the expressed concerns about Plaintiff's ability to interact with others and deal with stress, the ALJ limited Plaintiff to jobs involving "short interactions with supervisors and coworkers," "[no] more than incidental contact with the public," and "simple, routine and repetitive tasks in a work environment free of fast-paced production requirements" that involved "only simple, work-related decisions and few, if any, workplace changes."  (T. 17-18.)  She also excluded jobs that would require Plaintiff to work around crowds.  (T. 17.)

As summarized above, the ALJ also considered Plaintiff's subjective complaints and her documented activities of daily living for consistency with the overall administrative record. Accordingly, the ALJ reasonably considered the medical opinion evidence, treatment notes, Plaintiff's testimony and other evidence in the record to assess Plaintiff's physical and mental RFC.  (T. 16-21.)  Thus, the ALJ's determination that Plaintiff was capable of performing less than the full range of sedentary work was supported by substantial evidence.

### F.    Substantial Evidence Supports the ALJ's Step Five Determination

Plaintiff has not raised any specific challenge to the ALJ's step five determination, so this Court will only briefly address this issue.  At step five, the burden shifts to the Commissioner "to

show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting

*Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional

limitations that 'significantly limit the range of work permitted by his exertional limitations,' the

ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d

Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a

hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d

107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of

work as long as the hypothetical facts the expert is asked to consider are based on substantial

evidence and accurately reflect the Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x

274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is

supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

VE Duchon testified at the hearing.  (T. 78-87.)  Because this Court has found the ALJ's

RFC determination was supported by substantial evidence, it also finds her hypothetical to VE

Duchon based upon that RFC was proper, and thus the ALJ's step five determination was

supported by substantial evidence.  (T. 21-22, 79-84.)  Based on the foregoing, the ALJ's

decision was based upon correct legal standards, and substantial evidence supports her

determination that Plaintiff was not under a disability within the meaning of the SSA.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March  12 , 2021
       Binghamton, New York


                         Miroslav Lovric
                         U.S. Magistrate Judge